# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

**JARELL D. TERRY**                                                                                    **PLAINTIFF**
**ADC #149998C**

v.                                    No: 2:20-cv-00066 DPM-PSH

**CALVIN ARNETT**                                                                                    **DEFENDANT**

## PROPOSED FINDINGS AND RECOMMENDATION

## INSTRUCTIONS

The following Recommendation has been sent to Chief United States District Judge D.P. Marshall Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## DISPOSITION

### I. Introduction

Plaintiff Jarell D. Terry filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on March 30, 2020, while incarcerated at the Arkansas Division of Correction's East Arkansas Regional Unit (Doc. No. 2). Terry alleged that on January 10, 2020, he was sprayed with chemical agents, handcuffed, and punched or kicked by John Doe

ADC employees (the "January 10 incident"). Terry later filed two addenda to his complaint (Doc. Nos. 20 & 75). His official capacity claims were dismissed, and his individual capacity claims were limited to Eighth Amendment excessive force claims against Sergeant Calvin Arnett, Lieutenant Amanda Granger, Major Kenyon Randle, and Sergeant Bernard Hamilton Jr. *See* Doc. Nos. 57 & 74. His claims against Granger, Randle, and Hamilton have been dismissed. *See* Doc. Nos. 123 & 219.

Arnett filed a motion for summary judgment, a brief in support, and a statement of facts asserting that he is entitled to judgment as a matter of law on the merits of Terry's claims (Doc. Nos. 201-203). Terry filed several responsive pleadings, including a response to Arnett's statement of facts (Doc. Nos. 213-215). Terry also filed a motion for judgment on the pleadings, which is treated as a motion for summary judgment (Doc. No. 217). Arnett filed a response to that motion (Doc. No. 218). For the reasons set forth in this Recommendation, the undersigned recommends that Arnett's motion for summary judgment be granted and that Terry's motion for summary judgment be denied.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not

genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment. The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them." *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.  Facts

1. On January 10, 2020, Terry was housed at the ADC's East Arkansas Regional Unit. *Incident Report Summary* (Doc. No. 202-1 at 6-7).

2. Around 8:55 a.m., inmate Ramon Huntley was observed by Sergeant Westbrook lingering around the chow hall, after his barracks already exited the area. *Id.*

3. Huntley was ordered to exit the chow hall, but he refused to comply with the order and became aggressive. *Id.*

4. Several officers attempted to restrain Huntley, while Huntley continued to resist. *Id.* Terry claims the officers were "severely beating" Huntley, not simply restraining him. *Terry's Statement of Facts* (Doc. No. 213) at ¶¶ 4, 6, 8, & 16.

5. While officers tried to restrain Huntley, several inmates, including Terry, rushed the chow hall to assist Huntley. *Incident Report Summary* (Doc. No. 202-1 at 6-7).

6. Terry understood that he should not have interfered when officers attempted to restrain Huntley. *Terry Deposition* (Doc. No. 202-2) at 36:11-39:22.

7. Nevertheless, Terry ran towards the officers and told them something to the effect that "what they were doing was wrong and they need to stop beating [Huntley] up like that." *Terry Deposition* at 12:24-13:6.

8. Officers Padillo and Swiney (non-parties in this case) pepper sprayed Terry. *Terry Deposition* at 13:7-23.

9. Terry testified that after he was pepper sprayed, he swung his hand one time at Padillo but missed him. *Terry Deposition* at 33:5-11.

10. Terry claimed that his "survival instinct" made him fight the officer after he was pepper sprayed. *Terry Deposition* at 33:15-25.

11. Terry testified that he laid down on his stomach, and Swiney came and handcuffed him. *Terry Deposition* at 14:9-19.

12. Terry stated:

> After he handcuffed me, that's when Arnett had came from cross – after I was handcuffed, fully handcuffed and not bucking, anything like that, Officer Arnett had came from across the hallway and hit me in my jaw and in my rib cage.

*Terry Deposition* at 14:15-19.

13. Video footage of the incident was filed under seal (Doc. No. 193). There are four videos labeled "118 Capt. Off", "120 East Hall," "124 Main Hall," and "127 Chow Hall."

14. The main hall video shows Terry's appearance around 9:03:22 a.m., when Terry runs towards security officers who were restraining Huntley. Terry was waving his arms and punching at the officers.

15. The video does not clearly show Terry being pepper sprayed, but shows two officers, Swiney and Arnett, trying to restrain Terry, while Terry continues to actively resist. *Main Hall Video* at 9:03:30-41 a.m.

16. While the officers were still trying to restrain Terry, Arnett appears to punch Terry in his rib area. *Id.* at 9:03:34 a.m. Arnett also makes a kicking motion towards Terry. Arnett claims in his incident report that he struck Terry twice with a closed fist. *Incident Report* (Doc. No. 202-1 at 19-22). Disciplinary charges filed against Terry indicate that Arnett also kicked Terry. *Major Disciplinary* (Doc. No. 202-1 at 42).

17. Swiney subsequently gained control of Terry and sat on his back while he handcuffed him. *Main Hall Video* at 9:03:30-35-41 a.m.

18. The video does not show Terry being punched after he was handcuffed, and does not show Terry being kicked in his face. *Id.* at 9:03:52-9:04:00.

19. Once he was handcuffed and Swiney left, Terry got up and walked around. *Id.* at 9:04:01-9:04:21.

20. Approximately ten seconds after the end of this incident, Terry was escorted for decontamination. *Terry Deposition* at 19:20-25.

21. Terry was seen by medical staff and prescribed a pain reliever. *Condensed Health Services Encounter* (Doc. No. 202-1) at 51; *Terry Deposition* at 23:18-25 – 24:1-10.

22. As a result of the January 10 incident, Terry was charged with a major disciplinary. *Major Disciplinary* (Doc. No. 202-1 at 42).

23. In the disciplinary, Captain R. Barden's notice of charges stated:

> Inmate Jarell Terry ADC#l 49998 also rushed out the chow hall and began swinging closed at LT. Swiney, Lt Swiney then sprayed a burst of MK-4 defense technology towards both inmates. Lt Swiney then grabbed Inmate Terry's upper body area. Sgt. Arnett then struck Inmate Terry with two closed fist causing him to go to the ground. Inmate Terry still refused to be placed in restraints. Sgt. Arnett then kicked Inmate Terry in the rib area at which time he began to comply allowing Lt. Swiney to place hand restraints on him.

*Id.*

24. Terry waived his right to a disciplinary hearing and did not appeal his disciplinary conviction. *Terry Deposition* at 47:15-48:5. He testified that his

punishment included reduction to class IV for a year, 30 days punitive, 60 days restriction, and assignment to a program. *Id.* at 47:21-23.

### IV. Analysis

Arnett argues that he is entitled to qualified immunity with respect to Terry's excessive force claim. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The unnecessary and wanton infliction of pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. "Whenever prison

officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7). *See also Whitley v. Albers*, 475 U.S. 312, 322 (1986) (holding that, in an excessive force case, there must be "a reliable inference of wantonness," and not "a mere dispute over the reasonableness of particular use of force or the existence of arguably superior alternatives"). Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate. *Jones v. Shields*, 207 F.3d at 495. Unless "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.'" *Johnson v. Bi-State Justice Ctr./Arkansas Dep't of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993) (*citing Whitley,* 475 U.S. at 322).

A plaintiff need not allege significant injuries to state an excessive force claim.[1] However, the extent of a plaintiff's injuries may constitute evidence of the

---

[1] *See Wilkins v. Gaddy*, 130 S.Ct. 1175, 1178-79 (2010) (abrogating the *de minimis injury* rule in excessive force cases, and clarifying that the extent of the injury is only one factor to be considered when resolving the "core judicial injury" of "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm"); *Williams v. Jackson*, 600 F.3d 1007,

amount and type of force used, and a greater than *de minimis* use of force is required. "Even where the force is unjustified, 'not every push or shove violates the Constitution, but any use of force greater than *de minimis*, or any use of force that is 'repugnant to the conscience of mankind,' does." *Burt v. Nurse R.N.,* No. 4:19-CV-00040-SMR-CFB, 2019 WL 8752341, at *2 (S.D. Iowa Mar. 27, 2019) (citing *Irving v. Dormire*, 519 F.3d 441, 446 (8th Cir. 2008)).

The facts concerning Arnett's use of force are largely undisputed. Arnett does not dispute that he struck Terry on January 10. However, Terry claims that Arnett struck him after he was handcuffed and restrained. Specifically, Terry states:

> After being handcuffed by Officer Swiney, Officer Arnett then ran from across the hallway and struck the Plaintiff numerous times hitting the Plaintiff in the jaw and rib cage area.

Doc. No. 215 at 2. Accordingly, the parties dispute when Terry was hit by Arnett and whether he was restrained or not when hit by Arnett.

The Court has carefully reviewed the video recordings of the January 10 incident, and finds that Arnett's version of what happened is corroborated by the video, while Terry's version of what happened is blatantly contradicted by the video. The main hall video shows that Arnett struck Terry **before** he was handcuffed.

---

1012 (8th Cir. 2010) (holding that "the extent of any resulting injury, while material to the question of damages and informative as to the likely degree of the force applied, is not in and of itself a threshold requirement for proving" an excessive force claim).

Swiney had taken Terry to the floor and partially restrained him, but Terry continued to struggle as Arnett hit him at least once and possibly kicked him once. As stated above, if opposing parties tell two different stories, as is the case here, the Court is required to view genuinely disputed material facts in a light most favorable to the nonmoving party, **as long as** those facts are not so blatantly contradicted by the record that no reasonable jury could believe them. The Court finds that the facts alleged by Terry are so blatantly contradicted by the record that no reasonable jury could believe them. The Court is therefore not required to view the facts in a light most favorable to Terry, and declines to adopt his version of the facts for purposes of ruling on this motion. *See Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017).

Given that Terry rushed officers while they were trying to restrain another inmate, while waiving his arm and swinging at them, and then actively resisted even after being pepper sprayed, Arnett's actions against Terry while another officer was struggling to hold him did not constitute excessive force, but instead constituted a good faith effort to maintain or restore discipline. The force used as reflected in the video was justified under the circumstances presented and was necessary to gain control over Terry. Terry's injuries only required treatment with a pain reliever. The evidence before the Court simply does not support a finding that the use of force was applied maliciously and sadistically to cause harm. There was therefore no

constitutional violation, and Arnett is entitled to qualified immunity on Terry's excessive force claim.[2]

## V.  Conclusion

Arnett's motion for summary judgment (Doc. No. 201) should be granted. Judgment should be awarded in favor of Arnett, and Terry's claim dismissed with prejudice. Terry's motion for summary judgment (Doc. No. 217) should be denied.

IT IS SO RECOMMENDED this 21st day of June, 2022.

_____
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court rejects Arnett's argument that Terry's claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck v. Humphrey* bars a claim for damages if a judgment in a plaintiff's favor would necessarily imply the invalidity of the plaintiff's conviction, continued imprisonment, or sentence and the conviction or sentence has not been reversed, expunged, or called into question by issuance of a federal writ of habeas corpus. 512 U.S. 477, 486-487 (1994). If a prison disciplinary conviction *does not* result in the elimination of good-time credits, it has no effect on the length of the underlying sentence and is not barred by *Heck v. Humphrey. See Muhammad v. Close*, 540 U.S. 749, 754-755 (2004) (where no good-time credits were eliminated by a prison disciplinary determination, that decision has no effect on the term of incarceration ordered by the prisoner's original criminal judgment of conviction). *See also Cooper v. Norris,* No. 5:09CV00278SWW, 2009 WL 4251053, at *3 (E.D. Ark. Nov. 23, 2009) ("[A] class reduction, with no accompanying loss of accrued good-time credits, did not 'inevitably affect' Petitioner's term of confinement under Arkansas law, as contemplated by *Sandin*. At most, the reduction in class status deprived him of the opportunity to earn future good-time credits."). Terry does not allege that he lost good time credits; instead, he was assigned to Class IV status for a year.